UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEANN COVARRUBIAS,<br><br>      Plaintiff,<br>vs.<br>FEDERAL HOME LOAN<br>MORTGAGE CORPORATION;<br>DOES 1 through 50 inclusive,<br><br>      Defendants. | CASE NO. 12cv2775 WQH (DHB)<br><br>ORDER |

HAYES, Judge:

  The matters before the Court are the Motion for Sanctions (ECF No. 11) filed by Plaintiff Roseann Covarrubias and the Motion to Dismiss (ECF No. 13) filed by Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac").

**I.**  **Background**

  On November 16, 2012, Plaintiff Roseann Covarrubias initiated this action by filing a Complaint against Freddie Mac. (ECF No. 1). The Court dismissed the Complaint without prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9).

  On September 23, 2013, Plaintiff filed the First Amended Complaint, which is the operative pleading. (ECF No. 10).

### A. Allegations of the First Amended Complaint

"At all relevant times to this action, Plaintiff has owned, and claims to be legally entitled to own, that real property commonly known as 247 Elm Avenue, Chula Vista, California...." (ECF No. 10 ¶ 6). In May 2006, "Plaintiff, together with her former co-owner Robert Toral, executed a Note and Mortgage in favor of Bank of America, N.A., obtaining a loan secured by the subject property in the amount of $399,900.00. PRLAP, Inc. was named as the Trustee and remains the Trustee of Record, to the exclusion of all others who pretend to occupy said position." *Id.* ¶ 22.

"To date, there has been NO substitution or assignment of the Lender, Bank of America, N.A. or the Trustee PRLAP, Inc. recorded with the San Diego County Recorder's office." *Id.* ¶ 23. Subsequent to May 30, 2006, Bank of America, N.A. did not "sell, assign, transfer, or in any other manner dispossess itself, by any writing whatsoever, of the rights and benefits set forth under [the] May, 2006 Note and Deed of Trust to [Freddie Mac] or any predecessor in interest of [Freddie Mac]." *Id.* ¶ 24. "Bank of America never sold, transferred, or granted their Note or Mortgage to the Sponsor, or Depositor of any securitization trust established by [Freddie Mac]..." *Id.* ¶ 25. Freddie Mac is "merely a third party stranger to the loan transaction." *Id.*

Freddie Mac "claims to be the successor to the lender, Bank of America, N.A., by way of a purported assignment of the interests in the Note and Deed of Trust to a REMIC trust administered by Freddie Mac as Trustee ... in the year 2012." *Id.* ¶¶ 26, 28. The "closing date" for the REMIC trust administered by Freddie Mac was in the year 2006. *Id.* ¶ 27. "The attempted assignment in the year 2012 of a trust closed in the year 2006 was void, and all interests in the Note and Deed of Trust remain with the original lender...." *Id.* ¶ 29.

On January 13, 2012, a 'Notice of Default,' was executed and caused to be recorded in San Diego County by Rachel C. Hamburg, an employee of Quality Loan Service Corporation ("Quality"). The 'Notice of Default' "purported to declare [] Plaintiff's Note and Deed of Trust in default on behalf of the lender and the lender's

1 successors." *Id*. ¶¶ 32, 33. Hamburg, "acting at the direction and control of Freddie
2 Mac ... knew when she signed the 'Notice of Default' that it was forged, and that it was
3 not prepared by or on behalf of Bank of America, N.A., and that instead the document
4 was forged, prepared, filed and recorded for the pecuniary benefit of [Freddie Mac]."
5 *Id*. ¶ 33(m).

6       On September 28, 2012, Quality employee Daisy Rios, "acting at the direction,
7 control, and for the benefit of [Freddie Mac], caused to be recorded with the County of
8 San Diego a 'Notice of Trustee's Sale.'" *Id*. ¶ 34. "Daisy Rios knew when she signed
9 the 'Notice of Trustee's Sale' that it was forged, and that it was not prepared by or on
10 behalf of Bank of America, N.A." *Id*. ¶ 35(E).

11       On October 19, 2012, "a 'Trustee's Sale' was purportedly undertaken by
12 [Quality] at the direction and control of, and on behalf of [Freddie Mac]." *Id*. ¶ 36. At
13 the time of the 'Trustee's Sale,' Quality knew that "it conducted said sale at the
14 direction and control of Freddie Mac," and that "Freddie Mac had no demonstrable or
15 actual interest in the Note and Deed of Trust." *Id*. ¶¶ 37, 38. The agents and employees
16 of Freddie Mac and Quality "acted in concert with and for the benefit of Freddie Mac,
17 and at all times acted with the intent to fraudulently deprive [] Plaintiff of her money
18 and property, including Plaintiff's home." *Id*. ¶ 41. No sale or auction of the property
19 took place, and instead Freddie Mac "simply asserted that an event took place, when no
20 event of any kind took place." *Id*. ¶ 42.

21       On October 30, 2012, a 'Trustee's Deed Upon Sale' was recorded by Quality
22 employee Karla Sanchez "at the direction, control, and for the benefit of Freddie Mac."
23 *Id*. ¶ 43. Sanchez knew when she signed the 'Trustee's Deed Upon Sale' that "it was
24 forged, and that it was not prepared by or on behalf of Bank of America, N.A." *Id*. ¶
25 44(D). Sanchez "knew the 'foreclosure sale' of the subject property was a sham, and
26 that no auction took place, no bids were requested and received, and that the 'Trustee's
27 Deed Upon Sale' was prepared and recorded without the requisite authority of the
28 actual lender and/or the actual pecuniary beneficiary of the Note and Deed of Trust."

*Id.* ¶ 44(K). Sanchez asserted several false and fraudulent statements in the 'Trustee's Deed Upon Sale' "in order to benefit her principal, Freddie Mac...." *Id.* ¶ 44(L)(a-m).

Plaintiff asserts five claims for relief: (1) declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202; (2) quasi contract; (3) unlawful debt collection practices in violation of 15 U.S.C. § 1629, *et seq.*; (4) wrongful foreclosure; and (5) quiet title. Plaintiff seeks "compensatory, special and general damages," as well as "punitive and exemplary damages." *Id.* at 52.

Plaintiff also seeks an order from the Court as follows:

> ... compelling Defendants to remove any instrument which does not or could be construed as constituting a cloud upon Plaintiff's title to the property, including any document filed with the County Recorder by Defendant relative to the subject property. ... finding that Defendants have no legally cognizable rights as to Plaintiff, the Property, Plaintiff's Promissory Note, Plaintiff's Deed of trust or any other matter based on contract or any of the documents prepared by Defendants, tendered to and executed by Plaintiff. ... restraining Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency of [t]his matter. ... compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiffs and returning same to Plaintiff's interest thereon at the statutory rate from the date the funds were first received by Plaintiffs.

*Id.* at 52-53.

### B. Motion to Dismiss

On October 7, 2013 Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13-1). Defendant contends Plaintiff's claims "must fail as a matter of law because Plaintiff does not have standing to challenge any of the assignments or agreements in the securitization process." *Id.* at 7. On October 29, 2013, Plaintiff filed an opposition. (ECF No. 15). Plaintiff contends she has asserted sufficient facts to proceed. (ECF No. 15-1 at 11). Alternatively, Plaintiff requests leave to amend. *Id.* On November 5, 2013, Defendant filed a reply. (ECF No. 16)

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of

Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or reasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

**III.  Discussion**[1]

   **A.  Standing**

Defendant contends that Plaintiff amended her complaint to mirror the allegations in *Glaski v. Bank of America, N.A.*, 218 Cal. App. 4th 1079 (2013). (ECF No. 13-1 at 7). There is a split of authority at the California Appellate level, and Defendant contends that survival of the Amended Complaint depends upon whether the Court decides to follow *Glaski* or opposing authority. *Id*. Defendant contends that "all of Plaintiff's claims must necessarily fail as a matter of law because Plaintiff does not have standing to challenge any of the assignments or agreements in the securitization process.

---

[1] The Court has jurisdiction pursuant to 12 U.S.C. § 1452(f), which grants original federal subject-matter jurisdiction over all actions to which Freddie Mac is a party.

Plaintiff contends that "... it is premature, at the pleading stage, to ask the Court to select a view to be followed, especially before [] Plaintiff has been permitted to obtain discovery." (ECF No. 15-1 at 5). Plaintiff also contends that she has "sufficiently pled both plausible and factual allegations, as well as legal claims, to enable [the First Amended Complaint] to move forward...." *Id*. at 8.

As a preliminary matter, in the Ninth Circuit, "attacks upon standing at the pleading stage are generally brought in a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *U.S. ex rel. Graybar Elec. Co., Inc. v. Miller/Watts Constr., Inc.*, No. 1:06-CV-1521 AWI DLB, 2011 WL 1464297, at *1 (E.D. Cal. Apr. 15, 2011). It is appropriate for the Court to consider Plaintiff's standing at this stage in the proceedings.

The Amended Complaint states that "the attempted assignment in the year 2012 to a trust closed in 2006 was void, and all interests in the Note and Deed of Trust remain with the original lender who can elect to enforce the contract executed by and between parties without the interference of [] Defendant, who lacks standing to assert any right, demand any payment, or take any action related thereto." (ECF No. 10 ¶ 29). Plaintiff relies upon *Glaski* to state that she has standing to challenge "the actual transfer of the [N]ote to the securitization trust." (ECF No. 10 ¶ 15 n. 1). In *Glaski*, the California Court of Appeal held that, under New York trust law, a transfer of a deed of trust in contravention of the trust documents is "void, not merely voidable," and, under California law, "a borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would void the assignment." *Glaski*, 218 Cal. App. 4th at 1095. Based upon this theory, the *Glaski* court held that the plaintiff had standing and stated a claim for quiet title, declaratory relief and unfair business practices under California Business and Professions Code § 17200. *See id*. at 1100-01.

This Court has declined to follow *Glaski* in the past. *See Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12cv2106-WQH-NLS, 2013 WL 5568737, at *9 (S.D. Cal. Oct. 3, 2013) (dismissing the First Amended Complaint after finding that plaintiff

lacks standing to challenge assignments); *Haddad v. Bank of America, N.A.*, No. 12cv3010-WQH-JMA, 2014 WL 67646, at *3-5 (S.D. Cal. Jan. 8, 2014) (dismissing the First Amended Complaint because Plaintiff lacked standing to maintain claims asserted). Other courts have also disagreed with *Glaski*. "[D]istrict courts have held that borrowers who were not parties to the assignment of their deed—and whose rights were not affected by it—lacked standing to challenge the assignment's validity because they had not alleged a concrete and particularized injury that is fairly traceable to the challenged assignment." *Marques v. Fed. Home Loan Mortg. Corp.*, No. 12-cv-1873-IEG, 2012 WL 6091412, at *4 (S.D. Cal. Dec. 6, 2012) (citations omitted); *see id*. at *5 ("[T]he validity of the assignment does not affect whether [the] borrower owes its obligations, but only to whom [the] borrower is obliged.") (quotation omitted); *see also Siliga v. Mortg. Elec. Reg. Sys., Inc.*, 219 Cal. App. 4th 75, 85 (2013) ("The Siligas do not dispute that they are in default under the note. The assignment of the deed of trust and the note did not change the Siligas' obligations under the note, and there is no reason to believe that Accredited as the original lender would have refrained from foreclosure in these circumstances. Absent any prejudice, the Siligas have no standing to complain about any alleged lack of authority or defective assignment."); *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 514-15 (2013) ("As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions. Furthermore, even if any subsequent transfers of the promissory note were invalid, [plaintiff] is not the victim of such invalid transfers because her obligations under the note remained unchanged.") (citations omitted); *cf. Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 944 (1976) ("A third party should not be permitted to enforce covenants made not for his benefit, but rather for others.... As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler.").

This Court finds the reasoning in the above-cited caselaw to be more persuasive than the reasoning in *Glaski*. *See Rivac v. Ndex W. LLC*, No. 13-1417-PJH, 2013 WL 6662762, at *4 (N.D. Cal. Dec. 17, 2013) ("This court is persuaded by the majority position of courts within this district, which is that *Glaski* is unpersuasive, and that plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of the PSA.") (quotation and citations omitted); *Boza v. U.S. Bank Nat'l Ass'n*, No. CV12-6993-JAK, 2013 WL 5943160, at *6 (C.D. Cal. Oct. 28, 2013) ("The majority of federal district courts that have addressed the issue whether a borrower has standing to challenge securitization of a note by its transfer to a trust in an allegedly defective manner, are in accord with *Jenkins*. And, several state and district courts that have analyzed the effect of New York law on post-closing date acquisitions, like the one at issue in *Glaski*, have concluded that such transfers are voidable rather than void.") (citations omitted); *Newman v. Bank of New York Mellon*, No. 12-CV-1629-AWI, 2013 WL 5603316, at *3 n.2 (E.D. Cal. Oct. 11, 2013) ("[N]o courts have yet followed *Glaski* and *Glaski* is in a clear minority on the issue. Until either the California Supreme Court, the Ninth Circuit, or other appellate courts follow *Glaski*, this Court will continue to follow the majority rule.") (citations omitted).

The Court finds that, to the extent the First Amended Complaint makes claims under the theory set forth in *Glaski*, the Court declines to follow *Glaski* and finds that Plaintiff lacks standing to challenge an agreement to which she was not a party.

### B. Alternative Theories

The First Amended Complaint alleges claims under the theory of *Glaski,* that an attempted assignment to a REMIC trust administered by Freddie Mac was void because it was made after the trust closing date. (ECF No. 10 ¶ 29). However, elsewhere in the Complaint, Plaintiff alleges:

> Freddie Mac's conduct is part of a fraudulent debt collection scheme as evidenced by the facts set forth herein, including the execution of false and forged documents by the authors and signors of said documents to believe that Freddie Mac was a bona fide purchaser without notice of Plaintiff's

> property, when in fact [Freddie Mac] orchestrated the entire foreclosure process from start to finish to resolve a false and nonexistent 'pro tanto' claim in Plaintiff's Note and Deed of Trust.

*Id.* ¶ 61. It is unclear from the First Amended Complaint whether Plaintiff is alleging solely that Bank of America is still the lender because the transfer or assigment of the Note and Deed of Trust was invalid and void, similar to the allegations in *Glaski*, or whether Plaintiff is alleging that the assignment never took place.

In Plaintiff's Opposition, she argues that the First Amended Complaint "essentially states that the original lender is the current lender, and even [if] the subject assignment to the REMIC trust was an act authorized by the original lender, an assertion disputed by the Plaintiff, such assignment was [void] due to the failure to comply with relevant law regarding such purported assignment." (ECF No. 15-1 at 7). While this provides some clarification as to Plaintiff's theory, it is not included in the First Amended Complaint. The First Amended Complaint itself must, at a minimum, "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1098-99 (S.D. Cal. 2006). The Court finds that the First Amended Complaint fails to allege Plaintiff's standing to maintain her claims under any alternative theory to that of *Glaski*.[2]

**IV.   Motion for Sanctions**

On September 24, 2013, Plaintiff filed a Motion for Sanctions against Freddie Mac pursuant to Federal Rule of Civil Procedure 11(c). (ECF No. 11). Plaintiff contends:

> On December 3, 2012, rather than comply with the mandatory requirements of Federal Rule of Civil Procedure, Rule 11(b), [Freddie Mac] ... filed a State of California limited jurisdiction case against [] Plaintiff seeking summary possession of the property, and summary eviction of [] Plaintiff from her home – All to occur BEFORE this [C]ourt

---

[2] The Court will grant Plaintiff's request for leave to amend. Defendant has not made a motion on, and the Court does not rule on whether Plaintiff has adequately pled a claim for violation of the FDCPA.

>had an opportunity to determine [] Plaintiff's causes of action that touch on the disputed right of [] Defendant to assert the rights and the disputed right to possession of the property....

*Id.* at 5.  Plaintiff contends that Rule 11(b) requires Defendant to assert any unlawful detainer claim by way of a compulsory counterclaim in the instant proceedings.  *Id.*  Plaintiff contends that the filing of the unlawful detainer action in state court was done "(1) for an improper purpose to harass [] Plaintiff and to increase the cost of litigation ... ; and (2) the claims, and legal contentions set forth in the [s]tate [c]ourt action are not warranted under existing law and are a frivolous abuse of existing law...."  *Id.* at 6.

On October 21, 2013, Defendant filed an opposition.  Defendant contends that the Motion for Sanctions is meritless because "a [R]ule 11 motion can only be based upon a pleading that was filed or submitted to the District Court, whereas Plaintiff seeks sanctions for Freddie Mac's failure to file a pleading in District Court."  (ECF No. 14 at 4).  Defendant also contends that "a pleading filed in [s]tate court is not subject to a Rule 11 Motion, unless that pleading is removed to [f]ederal court, which is not the case here."  *Id.*

Federal Rule of Civil Procedure 11(b) provides that by presenting a "pleading, written motion, or other paper," an attorney or party certifies the following:

>(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Federal Rule of Civil Procedure 11(c) provides:

>If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed. R. Civ. P. 11(c)(1).

"The central purpose of Rule 11 is to deter baseless filings in district court and thus ... streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "Rule 11 permits a district court to sanction an attorney for conduct regarding 'pleading[s], written motion[s], and other paper[s]' that have been signed and filed in a given case." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1130 (9th Cir. 2002); *see also* Fed. R. Civ. P. Rule 11, Advisory Committee Notes, 1993 Amendments, Subdivisions (b) and (c) ("The rule applies only to assertions contained in papers filed with or submitted to the court.").

In the present case, the Motion for Sanctions is based not on a pleading, written motion, or other paper filed with the Court, but is based on the lack of a filed pleading with the Court. Plaintiff does not contend that any of Defendant's filings with this Court are frivolous under Rule 11.

**V.     Conclusion**

IT IS HEREBY ORDERED that the Motion to Dismiss is GRANTED. (ECF No. 13). The First Amended Complaint is DISMISSED without prejudice. Plaintiff's request for leave to amend is GRANTED. Plaintiff shall file any second amended complaint within thirty (30) days from the date this Order is filed. If Plaintiff fails to file a second amended complaint within thirty days, this action will remain closed without further order of the Court.

IT IS FURTHER ORDERED that the Motion for Sanctions (ECF No. 11) is DENIED.

DATED: January 28, 2014

**WILLIAM Q. HAYES**
United States District Judge